<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED CAPITAL FUNDING GROUP, LLC, a wholly owned subsidiary of GULF COAST BANK & TRUST COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WONDER GROUP, INC., ADAM WRIGHT, individually, and EG MUNOZ CONSTRUCTION LLC D/B/A EGM BUILDERS LLC, a nominal party,<br><br>Defendants,<br><br>v.<br><br>MICHAEL ESPINOSA, DAVID MUNOZ, and SKIP CURCIO,<br><br>Third-Party Defendants. | Civil Action No. 21-03291<br><br>**OPINION**<br><br>September 23, 2024 |

**SEMPER**, District Judge.

The current matter comes before the Court on Defendant EG Munoz Construction LLC d/b/a/ EGM Builders ("EGM") and Third-Party Defendants Michael Espinosa, David Munoz, and Skip Curcio's ("Individual Defendants") motion to dismiss (ECF 147) Defendant Wonder Group Inc.'s[1] ("Wonder Group") Amended Crossclaims and Third-Party Complaint (ECF 122); Defendant Adam Wright's motion to dismiss (ECF 148) Plaintiff United Capital Funding Group,

---

[1] As of August 4, 2022, Remarkable Foods, Inc. officially changed its name to Wonder Group, Inc. (*See* ECF 50.)

LLC's ("United Capital") Fifth Amended Complaint (ECF 148, "FAC"); and Plaintiff United Capital's motion to dismiss (ECF 149) Wonder Group's Second Amended Counterclaim Count I against United Capital (ECF 122). Oppositions and replies were filed with respect to each motion. (*See* ECF 147-1; ECF 147-4; ECF 147-5; ECF 148-1; ECF 148-3; ECF 148-4; ECF 149-1; ECF 149-2; 149-3.) The Court reviewed all submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, the Motion to Dismiss Count V of the Fifth Amended Complaint (ECF 148) is **GRANTED**; the Motion to Dismiss Wonder Group's Amended Crossclaim and Third-Party Complaint (ECF 147) is **GRANTED IN PART AND DENIED IN PART**; and the Motion to Dismiss Wonder Group's Count I of the Second Amended Counterclaim (ECF 149) is **GRANTED**.

I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[2]

Plaintiff United Capital Funding Group, LLC is in the factoring business, which involves purchasing accounts from other businesses. (FAC ¶ 13.) On November 13, 2019, Plaintiff entered into an agreement ("the Factoring Agreement") with co-Defendant EG Munoz Construction LLC d/b/a EGM Builders LLC ("EGM"). (*Id.* ¶ 14, Ex. A.) Pursuant to the Factoring Agreement, EGM offered to sell Plaintiff accounts arising from services that EGM provided to its customers. (*Id.* ¶ 15, Ex. A.) Remarkable Foods is a customer of EGM and entered a contract with EGM for construction services. (FAC ¶¶ 17, 29.) EGM performed its construction services and issued invoices to Remarkable Foods. (*Id.* ¶¶ 30, 31-32, Exs. C, D.) Through the Factoring Agreement, Plaintiff purchased two of EGM's accounts with Remarkable Foods. (*Id.* ¶¶ 18, 32.)

---

[2] The allegations in the FAC must be accepted as true solely for purposes of these Motions, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court also relies on documents integral to or relied upon by the FAC and the public record. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

Pursuant to the Factoring Agreement, EGM grants a power of attorney to Plaintiff to, among other things, accept payments on accounts, notify the payor that the account has been assigned and that payment should be made directly to Plaintiff, and take necessary action to collect on the purchased accounts, including in Plaintiff's own name. (*Id.* ¶ 22.) After an event of default, the Factoring Agreement provides Plaintiff authorization to perform additional collection services. (*Id.* ¶ 23.) The Factoring Agreement also provides that "before sending any invoice to an Account Debtor, [EGM] shall mark the same with such notice of assignment as [Plaintiff] may require." (*Id.* ¶ 25)

The two Remarkable Foods' accounts at issue here remain unpaid as to Plaintiff. (*Id.* ¶¶ 18, 32.) Plaintiff includes the invoices associated with the two accounts as exhibits to the FAC. (*See* FAC, Exs. C, D.) In accordance with the Factoring Agreement, both invoices contain the following language (the "Assignment Language"):

> All service that is being billed for is completed, correct, and the amount due is approved for payment in full by Remarkable Foods, Inc. I also confirm that there are no disputes, claims of offset or any other matters that reduce our obligation to pay the full amount due of the invoice to United Capital Funding Group LLC. Assigned and Payable to: United Capital Funding Group LLC PO Box 31246 Tampa, FL 33631-3246

(FAC ¶ 33.)

Plaintiff alleges that Remarkable Foods received notice through the Assignment Language on the invoices that each account was assigned to Plaintiff. (*Id.*) Plaintiff also sent Remarkable Foods a letter (the "Letter"), dated July 15, 2020, explaining that EGM had entered into an agreement with Plaintiff to manage EGM's accounts receivable and that EGM had assigned its accounts receivables to Plaintiff. (*Id.* ¶ 34.) The Letter further explains that all future payments to EGM should be directed to Plaintiff. (*Id.*) Plaintiff alleges that the Letter was delivered to Remarkable Foods on July 27, 2020. (*Id.* ¶ 35.) Both invoices state that payment was due on

receipt. (*Id.* ¶ 36.) Plaintiff, however, has not received payment on either invoice. (*Id.* ¶ 38.) Plaintiff sued, by filing the initial Complaint in this matter, to recover the amounts due and owing from its purchased accounts. (ECF 1.) Plaintiff has since filed several amended complaints. (ECF 13; ECF 31; ECF 43; ECF 104; ECF 123.) And there have been prior motions to dismiss. (ECF 18; ECF 34; ECF 72; ECF 80; ECF 107.) Wonder Group filed counterclaims and a Third-Party Complaint, asserting multiple claims against EGM, United Capital, and Third-Party Defendants Michael Espinosa, David Munoz, and Skip Curcio (the "Individual Defendants"). (ECF 45; ECF 106; ECF 122.) There have been motions to dismiss with respect to the counterclaims and Third-Party Complaint as well. (ECF 64; ECF 80.) The Court has several prior opinions on the docket with respect to the various motions to dismiss. (ECF 30; ECF 41; ECF 117.) Currently before the Court is a motion to dismiss Count V of Plaintiff's Fifth Amended Complaint (ECF 148), a motion to dismiss Wonder Group's Amended Crossclaim and Third-Party Complaint (ECF 147), and a motion to dismiss Wonder Group's Count I of the Second Amended Counterclaim (ECF 149). The Court will address each motion in turn.

## II.  LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has

acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

A motion to dismiss a crossclaim or counterclaim is governed by the same Rule 12(b)(6) standard. *See Merchants Mut. Ins. Co. v. 215 14th St., LLC*, No. 19-9206, 2020 WL 634149, at *1 (D.N.J. Feb. 10, 2020) ("When deciding a motion to dismiss a crossclaim or counterclaim under Rule 12(b)(6), the Court undertakes the same analysis as it would for claims in a complaint."); *see also In re Winer Fam. Tr.*, No. 05-3394, 2006 WL 3779717, at *2 (3d Cir. Dec. 22, 2006) (reviewing the district court's motion to dismiss a crossclaim under the Rule 12(b)(6) standard).

Finally, Rule 9(b) provides that a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake[,]" but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Accordingly, Rule 9(b) requires that a plaintiff allege "all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how of the

5

events at issue.'" *U.S. ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019) (quoting *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016)). With respect to a FCA claim, a plaintiff must "allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted.'" *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014) (quoting *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)).

### III. ANALYSIS

#### A. Motion to Dismiss Plaintiff's Fifth Amended Complaint (ECF 148)

Defendant Adam Wright moves to dismiss the fraud claim against him (Count V) in Plaintiff's Fifth Amended Complaint. (ECF 148-1 at 4-7.) The Court previously dismissed the fraud claim (Count V) against Defendant Wright. (ECF 117 at 5-7.) Plaintiff realleges the fraud claim against Wright in the FAC. (ECF 123 at 21-25.) Wright argues that Plaintiff failed to allege that Wright knew the statements at issue were false. (ECF 148-1 at 4.) Plaintiff argues that the common law fraud claim is adequately pled. (ECF 148-4 at 3-11.)

To prevail on a claim for common law fraud, a plaintiff must prove each of the following: (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997).[3] As before, United Capital makes no allegations to substantiate the conclusory allegation that "Wright and Remarkable Foods knew and/or believed that the Representations were false when made." (FAC ¶ 73.) There are allegations regarding Wright as the "authorized representative" of Remarkable

---

[3] *See Manley Toys, Ltd. v. Toys R Us, Inc.*, No. 12-3072, 2013 WL 244737, at *2 (D.N.J. Jan. 22, 2013) ("Because the parties have argued the viability of the remaining claims as though New Jersey substantive law applies, the Court will assume that to be the case." (citing *USA Mach. Corp. v. CSC, Ltd.*, 184 F.3d 257, 263 (3d Cir. 1999)).

Foods. (*Id.* ¶¶ 77-81.) However, none of the allegations set forth facts that Wright knew of the falsity of the representations. As such, because United Capital has failed again to include substantiating allegations as to Wright's knowledge, Defendant Wright's motion to dismiss the fraud claim is **GRANTED**. Count V is dismissed as to Wright **WITH PREJUDICE**. Accordingly, Defendant Wright is dismissed from this action.

### B. Motion to Dismiss Wonder Group's Amended Crossclaim and Third-Party Complaint (ECF 147)

Defendant EG Munoz Construction LLC and Third-Party Defendants Michael Espinosa, David Munoz, and Skip Curcio move to dismiss the civil conspiracy claim (Count I), fraud claims (Counts III and IV), aiding and abetting fraud claims (Counts V and VI), conversion claim (Count VII), aiding and abetting conversion claim (Count VIII), indemnification for mechanics liens claim (Count IX), and the unjust enrichment claim (Count X).

#### 1. Civil Conspiracy and Conversion

Wonder Group alleges in Count I of its Amended Crossclaim and Third-Party Complaint that United Capital, EGM, and the Individual Defendants were involved in a civil conspiracy intended to force Wonder Group to pay the relevant invoices twice. (ECF 122 ¶¶ 34-46.) EGM and the Individual Defendants contend that this claim is not plausibly pled. (ECF 147-1 at 13-17.) Under New Jersey law, civil conspiracy has four elements: "'(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.'" *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016) (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003)); *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). "In addition, one of the

parties must commit some act that is itself a tort in pursuance of the agreement. Mere agreement to do an act can never alone amount to a tort." *Delzotti v. Morris*, No. 14-7223, 2015 WL 5306215, at *7 (D.N.J. Sept. 10, 2015) (internal citations and quotations omitted).

EGM and the Individual Defendants first argue that Wonder Group failed to plead that an agreement existed. (ECF 147-1 at 13-15.) The Court has previously determined that the allegations sufficiently established the alleged agreement. (ECF 117 at 7-8.) The Court still deems the allegations to have sufficiently established the alleged agreement as to EGM and the Individual Defendants.

Next, EGM and the Individual Defendants maintain that the civil conspiracy claim fails because Wonder Group did not adequately plead that it engaged in an underlying tort. (ECF 147-1 at 15-17.) Wonder Group argues that it has sufficiently pled conversion. (ECF 147-4 at 5-7.)[4] Conversion is the "wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *City of Atlantic City v. Zemurray St. Capital, LLC*, No. 14-5169, 2017 WL 6638203, at *17 (D.N.J. Dec. 29, 2017) (quoting *Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281, 288 (N.J. Super. Ct. App. Div. 2009)) (internal quotation marks omitted). Under New Jersey law, the elements of conversion are "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Id.* Additionally, "[t]o maintain a claim for the conversion of money, a 'plaintiff must "establish that the tortfeasor exercised dominion over its money and repudiated the superior rights of the owner" and such "repudiation must be manifested in the injured party's demand for funds and the tortfeasor's refusal to return the monies sought."'" *Importers Serv. Corp. v. Aliotta*, No. 22-4640, 2024 WL 2765620, at *12 (D.N.J. May

---

[4] Wonder Group alleges a conversion claim against EMG and the Individual Defendants in Count VII. (ECF 122 ¶¶ 104-09.)

8

30, 2024); *Vita v. Vita*, No. 21-11060, 2022 WL 376764, at *3 n.2 (D.N.J. Feb. 8, 2022) (quoting *Bondi v. Citigroup, Inc.*, 32 A.3d 1158, 1190 (N.J. Super. Ct. App. Div. 2011)). Here, Wonder Group fails to plead that it had the right to immediate possession of the funds at issue. (*See* ECF 122.) Further, Wonder Group acknowledges that it did not demand or otherwise assert that EGM and the Individual Defendants repudiated Wonder Group's rights to the funds until after filing the lawsuit.[5] (ECF 147-4 at 6.) As such, the underlying conversion claim fails, and the civil conspiracy claim fails in concert. Accordingly, Counts I and VII are **DISMISSED WITH PREJUDICE** as to EGM and the Individual Defendants.

### 2. Fraud

Wonder Group alleges fraud claims against EGM and the Individual Defendants in Counts III and IV of its Amended Crossclaim and Third-Party Complaint. (ECF 122 ¶¶ 62-85.) Count III alleges fraud against EGM and the Individual Defendants for intentionally omitting that payments associated with Invoices #8 and #12 should have been made to United Capital. (*Id.* ¶¶ 62-73.) Count IV alleges fraud against EGM and the Individual Defendants for "invoices containing misrepresentations." (*Id.* ¶¶ 74-85.) To establish claim for fraudulent misrepresentation or omission under New Jersey law, a plaintiff must meet five requirements: (1) material misrepresentation or omission of presently existing or past fact, (2) knowledge or belief by the defendant of its falsity, (3) intention that other person rely on it, (4) reasonable reliance thereon by

---

[5] Per the New Jersey Supreme Court in *Meisels v. Fox Rothschild LLP*, "The demand is the linchpin that transforms an initial lawful possession into a setting of tortious conduct. Accordingly, in such circumstances, a demand is essential; a claimant must make a demand 'at a time and place and under such circumstances as defendant is able to comply with if he is so disposed, and the refusal must be wrongful.' *Mueller*, 84 A.2d 620. The demand puts the defendant on notice and is crucial when the initial possession is lawful or when it cannot be said that the holder is exercising independent dominion or control. *Id*. That said, there are circumstances, to be sure, where demand may be futile, but that is and must be viewed as an exception. *Id*." 222 A.3d 649, 661 (N.J. 2020) (quoting *Mueller v. Tech. Devices Corp.*, 84 A.2d 620 (N.J. 1951)).

other person, and (5) resulting damages. *Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 315-16 (D.N.J. Jan. 17, 2012).

EGM and the Individual Defendants argue that the fraudulent omission claim (Count III) fails for lack of a duty to disclose. (ECF 147-1 at 18.) Wonder Group counters that there is a duty to disclose arising from EGM and Wonder Group's established course of dealing. (ECF 147-4 at 8-9.) However, Wonder Group's cited case law proves unavailing. The case law contemplates imputing a duty to disclose based on "the nature of [the parties'] dealings" in situations where taking advantage of the "plaintiff's ignorance is 'so shocking to the ethical sense of the community, and is so extreme and unfair, as to amount to a form of swindling. . . .'" *City of Millville v. Rock*, 683 F. Supp. 2d 319, 330 (D.N.J. Jan. 12, 2010) (citing *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997) (quoting RESTATEMENT (SECOND) OF TORTS § 551, Cmt. 1)). However, the circumstances here do not demonstrate conduct "so shocking . . . as to amount to a form of swindling[.]" *Kensey*, 704 A.2d at 45 (quoting RESTATEMENT § 551, Cmt. 1). Rather, a significant portion of the factual allegations in this matter were contractually delineated. The facts as alleged accordingly do not represent conduct shocking enough to impose a duty to disclose that arose from a course of dealing.

EGM and the Individual Defendants also assert that the economic loss doctrine bars the fraud claims. (ECF 147-1 at 18-20.) Wonder Group argues that the economic loss doctrine does not bar the fraud claims because the doctrine does not bar tort claims arising out of thefts committed pursuant to, but not contemplated by, a contract. (ECF 147-4 at 9.)

"The economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract." *Rainforest Distrib. Corp. v. Vybes L.A. LLC*, No. 20-00634, 2021 WL 3879099, at *9 (D.N.J. Aug. 31, 2021) (internal quotation marks omitted)

(quoting *Qile Chen v. HD Dimension, Corp.*, No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010)); *see also Atlas Acquisitions, LLC v. Porania, LLC*, No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019) ("Under New Jersey law, a plaintiff typically may not recover in tort for damages caused by a breach of contract . . . ."). It follows, "a tort claim can [only] be asserted alongside a breach of contract claim . . . [if] the tortious conduct is extrinsic to the contract between the parties." *Qile Chen*, 2010 WL 4721514, at *8 (citing *Capitalplus Equity, LLC v. Prismatic Dev. Corp.*, No. 07-321, 2008 WL 2783339, at *6 (D.N.J. July 16, 2008)).

Here, the fraud allegations regarding EGM and Individual Defendants are not extrinsic to the contract. Rather, the allegations center on discrepancies in payments pursuant to the operative Agreement. The case cited by Wonder Group in opposition proves unavailing as it is not factually analogous.[6] Accordingly, the fraud claims are barred by the economic loss doctrine and will therefore be dismissed. As such, Counts III and IV of the Amended Crossclaims and Third-Party Complaint are **DISMISSED WITHOUT PREJUDICE**.

### 3. Aiding and Abetting

Wonder Group alleges that the Individual Defendants aided and abetted the commission of fraud (Counts V and VI) and conversion (Count VIII). (ECF 122 ¶¶ 86-103, 110-16.) The Individual Defendants argue that Wonder Group failed to state any aiding and abetting claim. (ECF 147-1 at 23-25.) Because the underlying conversion and fraud claims are dismissed, the aiding and abetting claims also fail due to the lack of a cognizable underlying tort. *See Fed. Nat'l Mortgage Ass'n v. DuBois*, No. 15-3787, 2019 WL 6522822, at *7 (D.N.J. Dec. 4, 2019) (dismissing aiding

---

[6] Wonder Group asserted: "In *Eastern Concrete*, the plaintiff paid the defendant for materials, some of which the defendant never supplied to plaintiff but instead resold to third parties, allegedly without the plaintiff's knowledge or consent." (ECF 147-4 at 9 (citing *Eastern Concrete Materials, Inc. v. Jamer Materials Ltd.*, 2019 WL 6734511, at *8 (D.N.J. Oct. 25, 2019), *report and recommendation adopted*, 2019 WL 6726476 (D.N.J. Dec. 10, 2019)). Here, the allegations involve improper double payments for services—the dimensions of which would be intrinsic to the operative contract—not theft of contractually obligated missing materials that are subsequently resold.

and abetting claims due to dismissed underlying tort claims). As such, Counts V, VI, and VIII are **DISMISSED WITHOUT PREJUDICE**.

### 4. Indemnification for Mechanics Liens

In Count IX, Wonder Group brings a claim for indemnification for mechanics liens against the Individual Defendants and EGM. (ECF 122 ¶¶ 117-22.) A claim for indemnification can arise in two ways. "First, a court may find a party is entitled to indemnification pursuant to an express contract creating such an obligation." *Poltrock v. NJ Auto. Accts. Mgmt. Co.*, No. 08-1999, 2008 WL 5416396, at *9 (D.N.J. Dec. 22, 2008). "Second, a duty to indemnify, also known as common law indemnification, arises where a party seeking indemnification can set forth a sufficient legal relationship between itself and the third-party defendant," such as an employer-employee or principal-agent relationship. *Id.* Wonder Group cites Section 7.1.13.2 of the Construction Agreement which provides:

> [T]he Owner reserves the right to settle any disputed mechanic's or material supplier's lien claim by payments to the claimant or by such other means as the Owner, in the Owner's sole discretion determines is the most economical or advantageous method of settling the dispute. The Construction Manager shall promptly reimburse the Owner, upon demand, for any payments so made. If such lien is not canceled and discharged by the Construction Manager as provided in Section 7.1.13.1 above, the Owner shall have the right to cause such lien to be canceled and discharged by bond and, in such event, all costs and expenses incurred by the Owner in connection therewith, including, without limitation, premiums for any bond furnished in connection with such cancellation and discharge and attorneys' fees, disbursements, and expenses, shall be paid by the Construction Manager to the Owner on demand.

The Individual Defendants and EGM assert, without citing to case law, that Count IX is subsumed by the breach of contract claim in Count III. (ECF 147-1 at 25-26.) However, the Court will not dismiss the indemnification claim at this time. Wonder Group sufficiently states a claim for indemnification pursuant to an express contract creating such an obligation. Additionally, because EGM is identified as the Construction Manager of the project (ECF 122 ¶ 12), the Court

dismisses the indemnification claim against the Individual Defendants pursuant to the contractual language cited above. As such, Count IX is **DISMISSED WITHOUT PREJUDICE** as to the Individual Defendants. The motion to dismiss Count IX is otherwise **DENIED** as to EGM.

### 5. Unjust Enrichment

In Count X, Wonder Group alleges an unjust enrichment claim against EGM and the Individual Defendants. (ECF 122 ¶¶ 123-29.) "To establish a claim for unjust enrichment [in New Jersey], 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). For this claim, a plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011). In addition, "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012); *Bedi v. BMW of N. Am., LLC*, No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) ("[T]here must be a direct relationship to assert an unjust enrichment claim."). "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

Here, Wonder Group sufficiently pleads the unjust enrichment claim as to EGM. EGM and the Individual Defendants argue that the claim fails because EGM "earned the monies pursuant to its construction services . . . ." (ECF 147-1 at 26-28.) However, this argument does not defeat the claim at this stage. Wonder Group sufficiently pleads that it paid EGM for Invoices #8 and #12,

13

which Wonder Group alleges that EGM should not have retained. As such, the unjust enrichment claim against EGM survives.

However, there are no factual allegations in the Third-Party Complaint that capture the Individual Defendants such that a claim for unjust enrichment could proceed. As such, Wonder Group's motion to dismiss Count X is **GRANTED IN PART AND DENIED IN PART**. The unjust enrichment claim against the Individual Defendants is **DISMISSED WITHOUT PREJUDICE**.

### C. Motion to Dismiss Wonder Group's Count I of the Second Amended Counterclaim (ECF 149)

Plaintiff United Capital moves to dismiss the civil conspiracy and underlying conversion claim asserted by Wonder Group. (ECF 122 ¶¶ 34-46.) As discussed in Section III.B.1 above, Wonder Group alleges in Count I of its Second Amended Counterclaim, Crossclaims, and Third-Party Complaint that United Capital, EGM, and the Individual Defendants were involved in a civil conspiracy intended to force Wonder Group to pay the relevant invoices twice. (*Id.*) United Capital asserts that this claim is not plausibly pled. (*See* ECF 149-1.) Under New Jersey law, civil conspiracy has four elements: "'(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose, or of a lawful purpose to be achieved by unlawful means; and (4) proof of special damages.'" *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016) (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus*, 331 F.3d 406, 414 (3d Cir. 2003)); *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005). "In addition, one of the parties must commit some act that is itself a tort in pursuance of the agreement. Mere agreement to do an act can never alone amount to a

tort." *Delzotti v. Morris*, No. 14-7223, 2015 WL 5306215, at *7 (D.N.J. Sept. 10, 2015) (internal citations and quotations omitted).

As discussed above, the Court has previously determined that the allegations sufficiently established the alleged agreement (ECF 117 at 7-8), and the Court still deems the allegations to have sufficiently established the alleged agreement. Further, United Capital also argues that the civil conspiracy claim fails because Wonder Group did not adequately plead that it engaged in an underlying tort. (ECF 149-1 at 7-12.) Wonder Group argues that it has sufficiently pled conversion. (ECF 149-2 at 5-7.) Conversion is the "wrongful exercise of dominion or control over property of another without authorization and to the exclusion of the owner's rights in that property." *City of Atlantic City v. Zemurray St. Capital, LLC*, No. 14-5169, 2017 WL 6638203, at *17 (D.N.J. Dec. 29, 2017) (quoting *Chi. Title Ins. Co. v. Ellis*, 978 A.2d 281, 288 (N.J. Super. Ct. App. Div. 2009)) (internal quotation marks omitted). Under New Jersey law, the elements of conversion are "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." *Id.* Additionally, "[t]o maintain a claim for the conversion of money, a 'plaintiff must "establish that the tortfeasor exercised dominion over its money and repudiated the superior rights of the owner" and such "repudiation must be manifested in the injured party's demand for funds and the tortfeasor's refusal to return the monies sought."'" *Importers Serv. Corp. v. Aliotta*, No. 22-4640, 2024 WL 2765620, at *12 (D.N.J. May 30, 2024); *Vita v. Vita*, No. 21-11060, 2022 WL 376764, at *3 n.2 (D.N.J. Feb. 8, 2022) (quoting *Bondi v. Citigroup, Inc.*, 423 N.J. Super. 377, 432 (N.J. Super. Ct. App. Div. 2011)).

Here, as above, Wonder Group fails to plead that it had the right to immediate possession of the funds at issue. (*See* ECF 122.) Wonder Group again argues that it adequately alleges a claim for conversion because "the money used to pay the [i]nvoices never ceased being Wonder Group's

property." (ECF 149-2 at 6.) This argument does not cure the pre-suit demand issue,[7] nor does Wonder Group allege that Wonder Group would have been entitled to possession of the misdirected funds over United Capital. *See Importers Serv. Corp.,* 2024 WL 2765620, at *12. As such, the underlying conversion claim fails, and the civil conspiracy claim fails in concert. Accordingly, Count I of Wonder Group's Counterclaim is **DISMISSED WITH PREJUDICE** as to United Capital.

### IV.  CONCLUSION

For the reasons stated above, the Motion to Dismiss Count V of the Fifth Amended Complaint (ECF 148-1) is **GRANTED**; the Motion to Dismiss Wonder Group's Amended Crossclaim and Third-Party Complaint (ECF 147) is **GRANTED IN PART AND DENIED IN PART**; and the Motion to Dismiss Wonder Group's Count I of the Second Amended Counterclaim (ECF 149) is **GRANTED**. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: José R. Almonte, U.S.M.J.
    Parties

---

[7] Wonder Group acknowledged that it did not demand or assert that EGM and the Individual Defendants repudiated its rights to the funds until after filing the lawsuit. (*See* Section III.B.1, *supra*.)